IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DERRICK A. EDWARDS,        )<br>    Plaintiff,                )<br>                            )<br>v.                              )<br>                            )<br>K. KING, et al.,            )<br>    Defendants.        )| Case No. 7:21-cv-00047<br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Derrick A. Edwards, a Virginia inmate proceeding pro se, filed this civil action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, against four correctional officials at River North Correctional Center. Edwards claims that the defendants violated his rights under RLUIPA by confiscating his "'sovereign citizen' religious literature." Compl., ECF No. 1, at 2. The defendants have filed a motion for summary judgment to which King has responded. ECF Nos. 36, 41, and 46. For the reasons set forth below, the motion for summary judgment, ECF No. 36, is **GRANTED**.

          **I.**     **Background**

Edwards is in the custody of the Virginia Department of Corrections ("VDOC"). Compl. at 1. At the time the action was filed, he was incarcerated at River North Correctional Center ("RNCC"), where the events giving rise to this action occurred. Id. At all times relevant to the proceedings, defendants K. King, T. Phifer, H. Colna, and S. Peeples worked at RNCC. Id. King was the institutional investigator during the relevant period. Id. Phifer worked as a counselor, Colna was a lieutenant, and Peeples was a sergeant. Id.

On September 23, 2020, Edwards asked Phifer and Peeples to make copies of documents that he now describes as "legal documents and 'sovereign citizen' religious literature." Id. at 2. Because certain documents contained "sovereign citizen content," they were "confiscated as contraband" by Colna and forwarded to King for investigation. Grievance Response, King Aff. Encl. A, ECF No. 37-2 at 10.[1] On September 24, 2020, Colna issued a Notice of Confiscation of Property, which informed Edwards that "55 sheets of printed paper" had been seized as "contraband." Notice of Confiscation, King. Aff. Encl. A, ECF No. 37-2 at 9.

On September 29, 2020, Edwards filed a grievance challenging the confiscation of his paperwork. Regular Grievance, King Aff. Encl. A, ECF No. 37-2 at 7. Edwards asserted that Colna "stole his legal paperwork with no reason given for confiscation." Id.; see also id. (referring to the paperwork as "legal/case work"). Warden B. Kanode determined that the paperwork was "properly confiscated due to containing recognized gang identifiers" and therefore found the grievance to be unfounded. Id.

On January 25, 2021, Edwards filed this action claiming that the defendants violated his rights under RLUIPA by confiscating his "'sovereign citizen' religious literature." Compl. at 2. Edwards's complaint alleges that he believes that "his religion, Christianity, provides him sovereign citizenship," that he studies "'sovereign citizen' literature as his way of expressing his faith in Jesus Christ," and that the confiscation of his paperwork has prevented him from "fully exercising his religion." Id. at 4–5.

---

[1] Exhibit page citations refer to the pagination generated by the court's CM/ECF system.

In an affidavit accompanying his complaint, Edwards expresses the belief that "Christianity provides Christians with sovereign citizenship via the death of Jesus Christ—the true GOD Sovereign King." Edwards Aff., ECF No. 1-2, at ¶ 3. He asserts that, for the past five years, he has "studied the Christian Holy Bible along with [his] sovereign citizen literature daily as [his] way of expressing [his] faith in [his] God Jesus Christ" and that he associates with other inmates who share the same beliefs. Id. ¶¶ 3–4. Edwards further asserts that he is "unable to fully exercise [his] religious beliefs because of the [defendants'] confiscation of [his] 'sovereign citizen' literature." Id. ¶ 6. He maintains that the materials "taught fundamental rights of a Christian sovereign citizen and taught what their duties are to become a sovereign citizen." Id.

On August 16, 2021, the defendants filed a motion for summary judgment supported by affidavits from King and M. Duke, the Statewide Gang Coordinator for the VDOC. Duke explains in his affidavit that sovereign citizens are individuals who "oppose taxation and do not believe they are subject to government statutes or proceedings." Duke Aff., ECF No. 39, at ¶ 4. They also "refuse to recognize the authority of prison officials and have initiated liens against some employees." Id. ¶ 6. Duke notes that sovereign citizens have been labeled as a domestic terrorist group by the Federal Bureau of Investigation ("FBI") and that they are recognized as a gang by the VDOC. Id. ¶ 4; see also King Aff., ECF No. 37-2, at ¶ 6. He explains that "[g]ang activity presents security problems and disruptions in daily activities within the VDOC prisons" and that actions taken by sovereign citizens, including filing liens against prison employees and other government officials, cause "particular difficulties." Id. For instance, if officials are "unaware that a lien has been filed against them," the lien "may

adversely affect their credit or cause other financial problems." Id. Duke also notes that the "malicious filing of false liens is a felony" under Virginia law. Id.

The affidavit from King indicates that "[t]he VDOC has a zero tolerance policy for gang-related activity" and that documents containing gang-related information are considered contraband. King Aff. ¶¶ 5–6; see also VDOC Operating Procedure 802.1, King Aff. Encl. B, ECF No. 37-2 at 11 (defining "contraband" to include any document that "contains or indicates gang identifiers, language, or information"). King's affidavit includes the following summary of the paperwork that was confiscated from Edwards:

> The paperwork confiscated from Edwards appears to be authored by a man named Sam Kennedy who works or did work for the Republic Broadcasting Network, known to broadcast pro-sovereign material. The content of the material includes commonly known tactics and phrases used by the Sovereign Citizen movement and is essentially a beginner's guide to the movement. The document gives readers advice on how to disrupt or disregard court proceedings, challenge government jurisdiction, attempt to arrest government officials, and file false liens and other financial documents.

Id. ¶ 7.

The defendants provided a copy of the confiscated paperwork to the court for in camera review. See ECF No. 45-1. The paperwork consists of separate documents, the first of which is clearly associated with Sam Kennedy and the Republic Broadcasting Network. Id. at 3. It provides instructions on how incarcerated individuals can use liens and other "commercial remedies" to "terminate [their] kidnapping." Id. at 6–7. It also includes sample language for challenging the jurisdiction of the courts, establishing authority over judges, seeking judges' arrests, ordering that cases be dismissed, and using the threat of liens to get an official's attention. Id. at 7–19. The document encourages readers to "[i]ntroduce the Bible"

4

to support their arguments and to remember that "the court of Yahweh . . . is a superior court to all others" and that they "are Moses bringing the law into the land of the Pharaohs." Id. at 14, 18, 23. It is accompanied by an outline containing similar information. Id. at 22–29. Another document, titled "The Matrix and the U.S. Constitution," states that its author's name is "hidden for his safety." Id. at 31. The document advises readers that they have been brainwashed and lied to by government officials. Id. at 31, 33. It challenges the validity of federal constitutional and statutory provisions, and asserts that such laws "are subordinate to God's law." Id. at 32–44, 48. It also asserts that sovereign citizens cannot be lawfully tried or convicted of any statutory crime and that the obligation to pay and file taxes is a scam perpetrated by the Internal Revenue Service. Id. at 44.

In response the defendants' motion for summary judgment, Edwards filed another affidavit, as well as a declaration from Kevin Watson. In his affidavit, Edwards contends that the confiscation of his "Christian 'sovereign citizen' religious literature" has unduly burdened his "ability to practice and study his religion." Edwards 2d Aff., ECF No. 41-1, at ¶ 4. Edwards asserts that he "sought to use his confiscated Christian 'sovereign citizen' religious literature for study so that he could better live by the principles of righteous Christian sovereignty that he inherited from the blood of the Sovereign Lord Jesus Christ." Id. at ¶ 12. He denies being a member of a "gang" and contends that he has not used the information in the confiscated documents to actually disrupt court proceedings or file a false lien. Id. at ¶¶ 6, 11, 12. Edwards also contends that there is no evidence of him "doing anything disruptive, malicious, or unlawful." Id. at ¶ 13. Similarly, Watson's declaration indicates that he associated with Edwards and other inmates who claimed to be sovereign citizens and that he never witnessed Edwards

encourage other inmates to "overthrow federal or state governments," "disrupt the operation of the VDOC," or "file false liens against federal/state officials." Watson Decl., ECF No. 46-1, at ¶¶ 6, 7.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

## III. Discussion

Edwards claims that the defendants violated his rights under RLUIPA by confiscating his "'sovereign citizen' religious literature." Compl at 2. RLUIPA "prohibits a state or local

government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." Holt v. Hobbs, 574 U.S. 352, 356 (2015). The term "government" includes any official of "a State . . . or other governmental entity created under the authority of a State" or "any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4).

"Under RLUIPA, the inmate bears the initial burden of establishing that a prison policy [or practice] substantially burdens his or her ability to practice in accordance with a sincerely held religious belief." Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019) (citing Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2015)). "Once the inmate makes the requisite initial showing, the burden shifts to the government to show that the prison policy [or practice] is the least restrictive means of furthering a compelling governmental interest." Id. (citing 42 U.S.C. § 2000cc-1(a)). "As to those elements on which it bears the burden of proof, the government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." Smith v. Ozmint, 578 F.3d 246, 250 (4th Cir. 2009).

In this case, the defendants argue that Edwards is not entitled to relief under RLUIPA on two primary grounds.[2] First, they contend that Edwards's sovereign citizen beliefs are not religious in nature and are therefore not protected by RLUIPA. Second, the defendants argue

---

[2] The defendants correctly note that an inmate's "only potential remedies under RLUIPA are equitable." Wall v. Wade, 741 F.3d 492, 496 n.5 (4th Cir. 2014). "Congress did not authorize damages claims against state officials under RLUIPA." Id. (citing Sossamon v. Texas, 563 U.S. 277, 288 (2011); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009)).

7

that the confiscation of Edwards's sovereign citizen literature was the least restrictive means of furthering a compelling governmental interest. The court will address each argument in turn.

### A. Whether Edwards's beliefs are religious in nature

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012) (quoting 42 U.S.C. § 2000cc-5(7)(A)). To determine whether a plaintiff's beliefs are protected under RLUIPA, courts consider "whether they are (1) sincerely held and (2) religious in nature under [the plaintiff's] scheme of things." Coward v. Jabe, 532 F. App'x 328, 330 (4th Cir. 2013) (emphasis added) (quoting Moore-King v. Cnty. of Chesterfield, 708 F.3d 560, 570–71 (4th Cir. 2013)). "Under this standard, it isn't for judges to decide whether a claimant who seeks to pursue a particular religious exercise has 'correctly perceived the commands of [his] faith' or to become 'arbiters of scriptural interpretation.'" Yellowbear v. Lampert, 741 F.3d 48, 54–55 (10th Cir. 2014) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 716 (1981)). "Even if others of the same faith may consider the exercise at issue unnecessary or less valuable than the claimant, even if some may find it illogical, that doesn't take it outside the law's protection." Id.; see also Thomas, 450 U.S. at 714 (explaining in the context of the First Amendment that an individual's religious beliefs "need not be acceptable, logical, consistent, or comprehensible" in order to qualify for protection). "Instead, RLUIPA protects any exercise of a sincerely held religious belief." Yellowbear, 741 F.3d at 55 (emphasis in original).

In this case, Edwards has submitted sworn affidavits indicating that he is a Christian, that he believes that "Christianity provides Christians with sovereign citizenship," and that he desires to study sovereign citizen literature as a "way of expressing [his] faith" in God. Edwards Aff. at ¶ 3; see also Edwards 2d Aff. at ¶ 12 ("Plaintiff sought to use his confiscated Christian 'sovereign citizen' religious literature for study so that he could better live by the principles of righteous Christian sovereignty that he inherited from the blood of the Sovereign Lord Jesus Christ."). In light of RLUIPA's broad definition of "religious exercise," the court will assume for purposes of the pending motion that Edwards's particular beliefs regarding sovereign citizenship are religious in nature. See, e.g., Sirleaf v. Clarke, No. 3:18-cv-00311, 2021 U.S. Dist. LEXIS 44235, at *16 (E.D. Va. Mar. 9, 2021) (assuming that the activities at issue constituted a religious exercise "[g]iven RLUIPA's broad definition"); Whitehouse v. Johnson, No. 1:10-cv-01175, 2011 U.S. Dist. LEXIS 133822, at *10 (E.D. Va. Nov. 18, 2011) (same).

### B. Whether confiscating Edwards's sovereign citizen literature was the least restrictive means of furthering a compelling government interest

The defendants also argue that, even if Edwards's particular beliefs can be considered religious in nature, they did not violate his rights under RLUIPA because the confiscation of sovereign citizen materials was the least restrictive means of effecting the VDOC's compelling interest in institutional security. For the following reasons, the court agrees.

It is well settled that "prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). As the defendants explain in their brief, sovereign citizens are "widely recognized as a security threat group because the group attempts to undermine governmental authority." Love v. N.C. Dep't of Pub. Safety, No. 5:19-cv-00075, 2020 U.S. Dist. LEXIS 189646, at *7

9

(W.D.N.C. Oct. 13, 2020). The defendants also correctly note that the FBI "has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists." James-Bey v. Lassiter, No. 1:19-cv-00020, 2021 U.S. Dist. LEXIS 233155, at *9 n.7 (W.D.N.C. Dec. 6, 2021) (quoting Colar v. Heyns, No. 1:12-cv-001269, 2013 U.S. Dist. LEXIS 4316, at *9 (W.D. Mich. Jan. 11, 2013)); see also Waters v. Madson, 921 F.3d 725, 732 n.4 (8th Cir. 2019) ("Sovereign citizens are a loosely-affiliated group who believe government in the United States operates illegitimately and outside the bounds of it is jurisdiction. The FBI has labeled the sovereign citizens a domestic terrorist group."). Like the FBI, the VDOC considers sovereign citizens to be a security threat group, or gang, based on their anti-government beliefs, their refusal to recognize the authority of prison officials, and their efforts to obstruct authority and intimidate government officials by filing fraudulent liens. See King Aff. ¶¶ 4, 6.

Based on the evidence presented, and consistent with existing case law, the court concludes that the VDOC has a compelling interest in preventing the risks to security and order posed by inmates having unrestricted access to sovereign citizen literature. See Ferguson-El v. Horton, No. 7:16-cv-00120, 2016 U.S. Dist. LEXIS 166244, at *10 (W.D. Va. Nov. 30, 2016), aff'd, 688 F. App'x 193 (4th Cir. 2017) ("The VDOC bans Sovereign Citizen ideology and materials in its prisons because Sovereign Citizens are an anti-government group recognized as a security threat group, which is an opinion given its due deference."); Colar, 2013 U.S. Dist. LEXIS 4316, at *10 ("Given the fundamental belief of the sovereign-citizen movement—that the government lacks the authority to govern them—the [Department of Corrections] has a patently obvious penological interest in barring inmate meetings and

communications that would advance the movement's beliefs. The interest in preserving order and authority in the prison is self-evident.") (internal quotation marks and citations omitted). While Edwards emphasizes that there is no evidence that he or his associates at RNCC ever attempted to disrupt court proceedings, threaten officials, or file false liens, the documents that he sought to copy clearly encourage readers to engage in such activities. Moreover, "prison officials need not wait for a problem to arise before taking steps to minimize security risks." Hadi v. Horn, 830 F.2d 779, 785 (7th Cir. 1987); see also Fowler v. Crawford, 534 F.3d 931, 939 (8th Cir. 2008) (emphasizing that "[a] prison's interest in order and security is always compelling" and that prison officials are not required to "present evidence of actual problems to justify security concerns").

The court further concludes that the defendants have met their burden of proving that the confiscation of Edwards's sovereign citizen literature was the least restrictive means of furthering the VDOC's compelling governmental interest and that "a rational factfinder could only find for the [defendants]" on this issue. Smith, 578 F.3d at 250. The Supreme Court has explained that the "least-restrictive-means standard . . . requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" Holt, 574 U.S. at 364 (alterations in original) (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 728 (2014)). "While this is an exceptionally demanding standard, Congress nonetheless anticipated that courts would apply it with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and

11

discipline, consistent with consideration of costs and limited resources." Greenhill, 944 F.3d at 250 (internal quotation marks and citations omitted).

Here, the undisputed evidence establishes that the defendants only confiscated the sovereign citizen literature that Edwards sought to copy. Edwards does not allege, and there is no evidence to suggest, that the defendants confiscated any other materials from Edwards, such as his Bible or other Christian religious literature. Nor is there evidence that the defendants placed any other restrictions on his ability to practice his religion. Under similar circumstances, this court concluded that officials did not violate an inmate's rights under RLUIPA by preventing him from teaching sovereign citizen beliefs to other inmates. See Ferguson-El, 2016 U.S. Dist. LEXIS 166244, at *11–12 ("By asking Plaintiff to refrain from teaching a security threat group's ideology but permitting him to continue teaching his religious beliefs, [Defendants] sought a legitimate and neutral government purpose to prevent dangerous ideology from being disseminated in the prison while ensuring Plaintiff's ability to practice his religious beliefs."). For the same reasons, the court concludes that the confiscation of Edwards's sovereign citizen literature was the least restrictive means of furthering the VDOC's compelling interest in maintaining institutional security.

In his supplemental response in opposition to the defendants' motion, Edwards argues that the defendants "did not show that they have actually considered and rejected the efficacy of less restrictive measures." Pl.'s Supp'l Resp. Opp'n Mot. Summ. J., ECF No. 46, at 8. However, neither Edwards's complaint nor the attached grievance records suggested any

alternatives to confiscating the sovereign citizen literature,[3] and existing precedent does not require prison officials to refute every conceivable option to comply with RLUIPA. See Greenhill, 944 F.3d at 252 (noting that "the VDOC need not conceive of and then reject every possible alternative"); Holt, 574 U.S. at 370 (Sotomayor, J., concurring) ("[N]othing in the Court's opinion suggests that prison officials must refute every conceivable option to satisfy RLUIPA's least restrictive means requirement."). To the extent Edwards now argues that the defendants should have considered whether to grant him a "religious exemption" from the VDOC's restrictions on the possession of sovereign citizen materials, Pl.'s Supp'l Resp. Opp'n Mot. Summ. J. at 8, he does not cite to any other jurisdiction that has applied a religious exemption in this context. See Holt, 574 U.S. at 369 (noting that RLUIPA does not "require[] a prison to grant a particular exemption as soon as a few other jurisdictions do so" but that "when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course") (emphasis added). Nor is there any evidence from which a reasonable jury could find that allowing Edwards and other inmates with similar religious beliefs to possess sovereign citizen materials is a feasible alternative to the current restrictions in place to protect the VDOC's compelling interest in

---

[3] As the defendants note in their brief, the institutional grievance records indicate that the plaintiff referred to the confiscated documents as his "legal paperwork." Regular Grievance, 37-2 at 7. Neither his regular grievance nor the informal complaints submitted as exhibits mentioned Edwards's religion or his belief that the literature is religious in nature. Indeed, the current record is devoid of any evidence to suggest that the named defendants were aware of his religious beliefs at the time they confiscated his paperwork. Based on the current record, no reasonable jury could find that the named defendants consciously or intentionally interfered with his religious rights under RLUIPA. See Wall, 741 F.3d at 499 n.11 (noting that the plaintiff must "prove that the defendants' actions were intentional" in order to "ultimately succeed" under RLUIPA) (citing Lovelace v. Lee, 472 F.3d 174, 194–95 (4th Cir. 2006) (concluding that RLUIPA "reaches intentional conduct" but that "[a]llowing negligence suits to proceed under RLUIPA would undermine [the] deference [afforded to the experience and expertise of prison officials] by exposing prison officials to an unduly high level of judicial scrutiny").

13

maintaining institutional security. See, e.g., DePaola v. Va. Dep't of Corr., No. 7:12-cv-00592, 2015 U.S. Dist. LEXIS 78343, at *11 (W.D. Va. June 17, 2015) (concluding that the existing common fare program was the least restrictive means of furthering the VDOC's compelling interests and that "making individualized changes. . . would open the door to requests for similar, individualized adjustments . . . from multiple other sects, causing . . . problems that the current menu was designed to minimize"); see also Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006) (holding that a complete ban on the possession of certain books that the plaintiff claimed were necessary to practice his religion was the "least restrictive means to promote a compelling state interest in safety").

## IV. Conclusion

For these reasons, the court concludes that the named defendants are entitled to judgment as a matter of law on Edwards's claim for relief under RLUIPA. Accordingly, the defendants' motion for summary judgment, ECF No. 36, is **GRANTED**. An appropriate order will be entered.

Entered: March 22, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.22 18:24:29
-04'00'

Michael F. Urbanski
Chief United States District Judge